CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 19 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROY D. SMITH, <br> Petitioner, | Civil Action No. 7:08cv00514 |
| v. | MEMORANDUM OPINION |
| GENE M. JOHNSON <br> Director, Va. Dept. of Corrections <br> Respondent. | By: Samuel G. Wilson <br> United States District Judge |

In this 28 U.S.C. § 2254 habeas corpus petition, Roy D. Smith challenges the Virginia Department of Corrections' ("DOC") failure to award him good-time credits to reduce his life sentence. Smith alleges that the DOC policy violates his rights under the Due Process, Takings, and Equal Protection clauses of the U.S. Constitution and corresponding provisions of the Constitution of Virginia. The court finds his claims untimely and meritless, and dismisses them.

I.

Smith is currently serving his sentence in the Wallens Ridge State Prison in Big Stone Gap, Virginia. Smith plead guilty to First Degree Murder and two counts of Attempted First Degree Murder on January 21, 1997 in the Circuit Court of Prince William County and received a life sentence plus two concurrent ten-year sentences. The Virginia Court of Appeals affirmed his conviction and sentencing on May 12, 1998. Smith v. Commonwealth, 499 S.E.2d 11, 15 (Va. Ct. App. 1998). Nearly ten years after his conviction became final, Smith filed a writ of habeas corpus with the Supreme Court of Virginia challenging the DOC's failure to award him good-time credits to reduce his life sentence under the Due Process, Takings, and Equal Protection clauses of the Constitution of the United States and under similar provisions of the

Constitution of Virginia. Essentially, he argued that the court should allow him to reduce his sentence by subtracting his good-time credits from an average life-span. The Supreme Court of Virginia dismissed his petition as frivolous on March 3, 2008. Smith raises the same claims in his current federal habeas petition pursuant to 28 U.S.C. § 2254.

## II.

Under Va. Code Ann. § 53.1-202.2 (2008), "[e]very person who is convicted of a felony offense on or after January 1, 1995 and who is sentenced to serve a term of incarceration in a federal or local correctional facility shall be eligible to earn sentence credits in the manner prescribed . . . ." The statute defines earned sentence credits ("ESCs") as "deductions from a person's term of confinement earned through adherence to [statutory] rules . . . through program participation . . . and by meeting other such requirements as may be established by law or regulation." Id. Va. Code Ann. § 53.1-202.4 commits regulatory implementation of the statute to the Virginia Board of Corrections ("the Board"). At present, Department Operating Procedure No. 830.3 of the Virginia Department of Corrections ("DOP 830.3") implements Virginia's ESC statutes. Under DOP 830.3, offenders serving life sentences are part of the ESC system and are assigned to a class level to determine the number of ESCs earned for every thirty days served. However, under DOP 830.3, offenders serving life sentences cannot actually achieve early release by earning ESCs – they are assigned to a class level for recognition purposes only.

## III.

Smith's claims are untimely. The Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 101 (1996) (codified at 28 U.S.C. § 2244(d)(1)), establishes a one-year limitation period for filing habeas corpus petitions by persons in custody pursuant to a state-

2

court judgment. The limitation period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. This limitation period applies when the petitioner challenges the action of a state administrative agency as well as the decision of a state court. Wade v. Robinson, 327 F.3d 328, 332 (4th Cir. 2003). If the one-year period has already run, the Fourth Circuit applies equitable tolling only in "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Smith's claims are untimely under § 2244(d)(1)(A) because his conviction became final after the time for appealing the May 12, 1998 Virginia Court of Appeals judgment expired, more than ten years ago; under § 2244(d)(1)(B) because he does not allege that a state impediment prevented him from filing his petition earlier; under § 2244(d)(1)(C) because he does not assert a newly recognized right; and under § 2244(d)(1)(D) because, since Smith does not allege otherwise, the court assumes that the factual predicate for his claims arose more than one year ago and that he could have discovered his ineligibility for early release with due diligence when his period of incarceration began ten years ago. Finally, since Smith has not alleged any reason

3

that renders the application of the statute of limitations unconscionable, he is not entitled to equitable tolling. Therefore, the court finds Smith's habeas claims are untimely.

## IV.

Even if Smith's claims were timely, he still would not receive federal habeas relief because his claims lack merit whether the court views the Supreme Court of Virginia's adjudication through 28 U.S.C. § 2254(d)'s deferential lens or examines the merits *de novo*. Smith argues that the respondent must reduce his sentence by subtracting good-time credits from an average life-span. The court finds the argument to be specious.

The Circuit Court of Prince William County sentenced Smith to prison for the rest of his life, not for the rest of an average life-span. The end of Smith's own life defines his sentence, not a determinate period of years or some abstract, construct life. Smith defaults to the average-life-span argument because otherwise he cannot answer this obvious question: even if the Commonwealth were to apply ESCs to Smith's life sentence, how would it know when to release him?

Glascoe v. United States, 358 F.3d 967, 969-70 (D.C. Cir. 2004) is instructive. That case concerned a provision of the District of Columbia Code that made "[e]very person" convicted of violating D.C. criminal law eligible for good-time credits and required that those credits "be applied . . . to the person's minimum term of imprisonment to determine the date of eligibility for release on parole and to the person's maximum term of imprisonment to determine the date when release on parole becomes mandatory." D.C. Code § 24-428 (repealed). Under that provision, credits of ten days per month are applied to a sentence of ten years or more. After a District of Columbia court sentenced Glascoe to life imprisonment, he filed a habeas petition challenging

4

the government's decision not to grant good-time credits to prisoners serving life sentences. In rejecting as "implausible" Glascoe's argument that he was entitled to reduce his life sentence by ten days per month under the D.C. Code, the Court of Appeals for the D.C. Circuit stated:

> It would be meaningless for prison authorities to award a prisoner serving a life sentence 10 days of good time credit each month, unless there is a reduction in the time he must serve. In the usual case, the amount of the reduction is easily calculated: the prisoner's sentence minus good time credits yields his release date. But imprisonment for life supplies no fixed term from which to deduct good time credits; the length of the sentence is indefinite.

Glascoe, 358 F.3d at 969

The circumstances here support even more strongly the determination that Smith is not entitled to reduce his sentence through the application of ESCs. Virginia Code Ann. § 53.1-202.2 provides that an inmate is "eligible to earn sentence credits in the manner prescribed," implementation is delegated to the Virginia Board of Corrections, and the Virginia Board of Corrections has determined that inmates serving life sentences may be assigned a class level in the ESC system for recognition purposes only. In short, state law clearly defines who is eligible for early release through good-time credits, and it excludes inmates serving life sentences. The classification is clearly related to a legitimate governmental interest,[1] and Smith's claims that he

---

[1] Equal protection claims involving neither a suspect class nor a fundamental right receive rational basis review. Plyler v. Doe, 457 U.S. 202, 216-17 (1982). Since "inmates serving life sentences are not a suspect class," Davis v. Freeman, No. 95-8577, 1996 WL 276323, *1 (4th Cir. May 24, 1996), and "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Neb. Penal Inmates, 442 U.S. 1, 7 (1979), the court presumes the law is valid and sustains it unless the classification is not "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). The Supreme Court grants states significant leeway in prisoner classifications, McGinnis v. Royster, 410 U.S. 263, 270 (1973), and the Fourth Circuit has recognized that "[n]ot advancing the parole eligibility date of inmates serving life sentences through the application of gain time credits arguably serves a legitimate government penological interest in ensuring that inmates convicted of crimes warranting a life

5

was deprived of liberty[2] or property[3] without due process, or that the Commonwealth took his property without just compensation[4] are frivolous, as the Supreme Court of Virginia concluded in dismissing his habeas petition.

V.

For the foregoing reasons, the court dismisses Smith's petition.

**ENTER:** This 19th day of November 2008.

UNITED STATES DISTRICT JUDGE

---

sentence serve a significant portion of their sentence." Davis, No. 95-8577, 1996 WL 276323, *1 (4th Cir. May 24, 1996).

[2] Prisoners' Due Process rights are subject to "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In the Fourth Circuit, a prisoner's Due Process liberty interests are "those [interests] which were not taken away, expressly or by implication, in the original sentence to confinement." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Though states may create a liberty interest in early release by establishing a good-time credit system, Wolff, 418 U.S. at 557, courts refuse to recognize such an interest if the system in question grants prison officials discretion to award or deny credits. Abed v. Armstrong, 209 F.3d 63, 67 (2d Cir. 2000). Smith has no Due Process liberty interest in early release due to the discretion granted to the Board in Va. Code. Ann. § 53.1-202.4.

[3] Under the Due Process Clause, "[u]nilateral expectations and hopes for early release do not constitute property, which depends on a legitimate claim of entitlement." Montgomery v. Anderson, 262 F.3d 641, 644 (7th Cir. 2001). Smith has no Due Process property interest in earning early release through ESCs.

[4] As the Fourth Circuit has stated, "[t]he Takings Clause *protects* private property; it does not create it. Thus, in identifying a property interest so protected, we must look to 'existing rules or understandings that stem from an independent source such as state law.'" Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000) (quoting Bd. of Regents of Federal Colleges v. Roth, 408 U.S. 564, 577 (1972) (citation omitted)). Under state law, Smith has no property interest in earning early release through ESCs.

6